IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH C. BACHTELL AND RENEE D. BACHTELL, as Administrators of the Estate of Jamison Taylor Bachtell, dec'd. and in their own right 13170 Scott Road Waynesboro, PA 17268<br><br>Plaintiffs<br><br>v.<br><br>GENERAL MILLS, INC. 1 General Mills Blvd. Golden Valley, MN 55426-1348<br><br>And<br><br>SIGNATURE BRANDS LLC 808 SW 12th Street Ocala, FL 34471-0540<br><br>Defendants. | CASE NO.: _____<br><br><br>CIVIL ACTION<br><br>JURY TRIAL DEMANDED |

## CIVIL ACTION-COMPLAINT

I.  **NATURE OF ACTION**

1. Plaintiffs, Keith C. Bachtell and Renee D. Bachtell, as Co-Administrators of the Estate of Jamison Taylor Bachtell, deceased, and Keith C. Bachtell and Renee D. Bachtell, in their own right, bring this products liability action against Defendants General Mills, Inc. and Signature Brands, LLC as a result of an incident involving their minor son, Plaintiff-decedent Jamison Taylor Bachtell, on December 10, 2016.

2. Plaintiff-decedent suffered fatal injuries from Defendants' defective product, a Betty Crocker decorative icing tube and cap ("icing tube and cap"), more fully described herein.

## II.   PARTIES

3.   Plaintiffs, Keith C. Bachtell and Renee D. Bachtell, as Co-Administrators of the Estate of Jamison Taylor Bachtell, deceased, and Keith C. Bachtell and Renee D. Bachtell, in their own right, are adult citizens of the Commonwealth of Pennsylvania residing at 13170 Scott Road, Waynesboro, PA 17268.

4.   Defendant, General Mills, Inc. ("General Mills") is a Minnesota corporation authorized to do business in the Commonwealth of Pennsylvania with offices at 1 General Mills Blvd. Golden Valley, MN 55426-1348.

5.   Defendant General Mills is the registered owner of the Betty Crocker brand and is responsible for the designing, manufacturing, testing, assembling, marketing, distributing and selling Betty Crocker products, including but not limited to the Betty Crocker decorating icing tube and cap described in this Complaint.

6.   Defendant General Mills regularly conducts business in the Commonwealth of Pennsylvania.

7.   Defendant, Signature Brands LLC ("Signature Brands") is a Florida corporation authorized to do business in the Commonwealth of Pennsylvania with offices at 808 SW 12th Street Ocala, FL 34471-0540.

8.   Defendant Signature Brands is responsible for the designing, manufacturing, testing, assembling, marketing, distributing and selling the Betty Crocker decorating icing tube and cap described in this Complaint.

9.   Defendant Signature Brands regularly conducts business in the Commonwealth of Pennsylvania.

### III. JURSIDICTION AND VENUE

10. Jurisdiction for this action is conferred on The United States District Court for the Middle District of Pennsylvania under 28 U.S.C. § 1332 (a)(1).

11. The amount in controversy exceeds seventy-five thousand dollars ($75,000) pursuant to 28 U.S.C. § 1332 (a).

12. A jury trial is demanded.

13. Venue is properly laid in the Middle District of Pennsylvania because the witnesses and incident location are all common to Franklin County.

### IV. OPERATIVE FACTS COMMON TO ALL COUNTS

14. On Saturday afternoon, December 10, 2016, the Bachtell family was beginning to get into the Christmas spirit. In the kitchen, Jamison's mother, Renee, was baking Christmas cookies for the family to decorate.

15. Six-year old Jamison was happy and playing around with his cousin, waiting for the Christmas cookies to cool.

16. When the cookies were ready, Jamison's mother, Renee laid out the icing tubes she bought at the local grocery store.

17. The icing tube and cap at issue are depicted below:

 

18. The icing tube comes sealed with a small, white cap on the end.

19. Photographs of the cap to the icing tube are shown below for reference.

 

20. Before decorating the cookies that afternoon, Renee removed all of the caps and snipped the tips of each tube so the icing could be squeezed out.

21. The family, along with Jamison, all gathered at the kitchen table and used the icing tubes to decorate their Christmas cookies.

22. After all the cookies were decorated, Renee cleaned up the kitchen. She secured the small, white caps back on every tube.

23. About five minutes later, Jamison walked by the counter where the icing tubes were sitting and grabbed the red icing tube to squirt into his mouth.

24. *Then*--Jamison started choking.

25. When Jamison squeezed the tube, the small, white cap was on the red icing tube popped off and lodged in his airway.

26. Jamison's father, Keith, suddenly heard a "popping" sound and saw that his son was choking. He immediately called 911.

27. Jamison was transported via ambulance to Waynesboro Hospital Emergency Room, where medical care was administered.

28. After several hours, he was subsequently helicoptered to Penn State Health Milton S. Hershey Medical Center for further treatment.

29. Tragically, Jamison did not survive and died on December 11, 2016.

30. Jamison's death was a direct and proximate result of the unsafe and defective condition of the icing tube and cap.

31. As of December 10, 2016, the design of the icing tube and cap was unreasonably dangerous.

32. As of December 10, 2016, the icing tube and cap were in defective condition.

33. As of December 10, 2016, the icing tube and cap had not been properly designed, manufactured, tested, assembled, marketed, distributed and sold.

34. It is reasonably foreseeable that an incident like Jamison's would occur, as a result of the design defect of the icing tube and cap.

35. The cap was a choking hazard due to its small size.

36. The cap was also a choking hazard because it was the same exact color as the tube, making it extremely difficult to see whether the cap was on the tube.

37. The cap should have been attached to the tube to prevent choking.

38. Defendants failed to warn consumers that the cap of the icing tube was a choking hazard.

39. Defendants are liable for the harm suffered by Jamison Taylor Bachtell.

40. Plaintiff-decedent Jamison Taylor Bachtell suffered permanent, severe and disabling personal injuries, including untimely death, that are more fully described herein.

41. The grievous injuries and death of Jamison Taylor Bachtell were caused by the defective condition of the icing tube and cap, and were due in no manner whatsoever to any act or failure to act on the part of Plaintiff-decedent Jamison Taylor Bachtell.

42. The tortious conduct of all Defendants increased the risk of harm to Plaintiff-decedent Jamison Taylor Bachtell and was a substantial contributing factor to his death.

## V. DAMAGES

43. As a direct result of the tortious conduct of Defendants, Plaintiff-decedent Jamison Taylor Bachtell suffered the following injuries, including but not limited to:

    a. airway obstruction;
    b. choking;
    c. respiratory distress;

    d.    edema;

    e.    bruising;

    f.    need for emergency medical treatment;

    g.    loss of consciousness;

    h.    tracheostomy;

    i.    cardiac arrest;

    j.    anoxic brain injury;

    k.    untimely death;

    l.    profound pain and suffering;

    m.    physical and emotional distress;

    n.    terror;

    o.    panic;

    p.    fear;

    q.    past medical expenses;

    r.    incidental and other expenses;

    s.    economic damages;

    t.    past mental anguish;

    u.    loss of life's pleasures; and

    v.    other injuries and conditions documented in Plaintiff-decedent's medical records.

### COUNT I- STRICT LIABILITY
#### Plaintiffs v. Defendant General Mills

44. The previous paragraphs are incorporated by reference as though fully set forth at length herein.

45. Defendant General Mills is in the business of designing, manufacturing, testing, assembling, marketing, distributing and selling the icing tube and cap described in this Complaint.

46. The icing tube and cap were defective because the danger was unknowable and unacceptable to the average or ordinary consumer and/or a reasonable person would conclude

that the probability and seriousness of harm caused by the product outweighed the burden or costs of taking precautions.

47.   The subject icing tube and cap were defective and unreasonably dangerous to the ultimate users, operators or consumers, including Plaintiff-decedent Jamison Taylor Bachtell, pursuant to both a risk-benefit analysis and a consumer expectation analysis, when it was designed, manufactured, tested, assembled, marketed, distributed and sold by Defendant General Mills for reasons including but not limited to the following:

(a)   the icing tube was defective and unreasonably dangerous because it was not designed, manufactured, tested nor assembled with a cap properly and adequately attached and/or secured to the tube in order to prevent, and/or protect a person, including Plaintiff-decedent, from choking;

(b)   the icing tube was defective and unreasonably dangerous because it was not designed, manufactured, tested nor assembled with a cap that was the proper and adequate size to prevent, and/or protect a person, including Plaintiff-decedent, from choking;

(c)   the icing tube was defective and unreasonably dangerous because it was not designed, manufactured, tested nor assembled with a cap that was a different color than the tube so the cap could be easily seen and/or differentiated from the tube to prevent, and/or protect a person, including Plaintiff-decedent, from choking;

(d)   the icing tube was defective and unreasonably dangerous because it was not designed, manufactured, tested nor assembled with a cap that sealed, secured and/or snapped to the tube to prevent, and/or protect a person, including Plaintiff-decedent, from choking;

(e)   the icing tube was defective and unreasonably dangerous because it was not designed, manufactured, tested nor assembled with a cap that met industry safety standards to prevent, and/or protect a person, including Plaintiff-decedent, from choking;

(f)   the icing tube and cap were designed and manufactured in such a way as to leave present a latent defect that made the product more dangerous than the consumer, and in particular, the Plaintiff-decedent, would expect;

(g)     the icing tube and cap were designed and manufactured in such a way as to be inherently dangerous in that the design of the tube and cap failed to prevent and/or protect a person, including Plaintiff-decedent, from choking; and

(h)     The icing tube and cap were generally defective and unreasonably dangerous in their design, manufacture, assembly and warnings because the packaging failed to provide adequate protection when being used as advertised and marketed in that the packaging was furnished without adequate warnings.

48.     For the reasons set forth above, the icing tube and cap were unreasonably dangerous to foreseeable users, operators or consumers, including Plaintiff-decedent Jamison Taylor Bachtell.

49.     The defects described above directly and proximately caused Plaintiff-decedent Jamison Taylor Bachtell's devastating and catastrophic personal and economic injuries, including his untimely death.

50.     As the result of the defects of the icing tube and cap described above, Defendant General Mills is strictly liable to Plaintiff-decedent Jamison Taylor Bachtell.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for all actual and compensatory damages in an amount in excess of the prevailing federal arbitration limit and for any other further relief as this Honorable Court and/or jury may deem just and proper.

### COUNT II- BREACH OF WARRANTY
**Plaintiffs v. Defendant General Mills**

51.     The previous paragraphs are incorporated by reference as though fully set forth at length herein.

52.     Defendant General Mills is in the business of designing, manufacturing, testing, assembling, marketing, distributing and selling the icing tube and cap described in this Complaint.

53. Upon information and belief, Defendant General Mills breached both the express and implied warranties, including the warranty of merchantability, in that this product, identified as the icing tube and cap, were not of the fair average quality and standard, and the warranty of fitness for a particular purpose.

54. Upon information and belief Defendant General Mills improperly warranted the goods fit for the ordinary purpose intended, fully knowing that the icing tube and cap would be used by persons such as the minor Plaintiff-decedent.

55. Upon information and belief, Defendant General Mills improperly warranted to the Plaintiff-decedent Jamison Taylor Bachtell and others that the icing tube and cap were in compliance with local, state and federal regulations and rules in the United States of America.

56. Plaintiff-decedent Jamison Taylor Bachtell could not by the exercise of reasonable care, have discovered the defect or perceived its danger.

57. As the result of the breach of express and implied warranties, Defendant General Mills is liable to Plaintiff-decedent Jamison Taylor Bachtell.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for all actual and compensatory damages in an amount in excess of the prevailing federal arbitration limit and for any other further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT III- FAILURE TO WARN
### Plaintiffs v. Defendant General Mills

58. The previous paragraphs are incorporated by reference as though fully set forth at length herein.

59. Upon information and belief and at all relevant times, Defendant General Mills, knowing of the latent dangerous condition of the icing tube and cap resulting from the

aforementioned design and manufacturing defects, sold this product and failed to provide any warning of the dangerous condition that was prominent and understandable to foreseeable users or consumers, including Plaintiff-decedent Jamison Taylor Bachtell.

60. As the result of the failure to warn, Defendant General Mills is liable to Plaintiff-decedent Jamison Taylor Bachtell.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for all actual and compensatory damages in an amount in excess of the prevailing federal arbitration limit and for any other further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT IV- STRICT LIABILITY
### Plaintiffs v. Defendant Signature Brands

61. The previous paragraphs are incorporated by reference as though fully set forth at length herein.

62. Defendant Signature Brands is in the business of designing, manufacturing, testing, assembling, marketing, distributing and selling the icing tube and cap described in this Complaint.

63. The icing tube and cap were defective because the danger was unknowable and unacceptable to the average or ordinary consumer and/or a reasonable person would conclude that the probability and seriousness of harm caused by the product outweighs the burden or costs of taking precautions.

64. The subject icing tube and cap were defective and unreasonably dangerous to the ultimate users, operators or consumers, including Plaintiff-decedent Jamison Taylor Bachtell, pursuant to both a risk-benefit analysis and a consumer expectation analysis, when it was

designed, manufactured, tested, assembled, marketed, distributed and sold by Defendant Signature Brands for reasons including but not limited to the following:

(a) the icing tube was defective and unreasonably dangerous because it was not designed, manufactured, tested nor assembled with a cap properly and adequately attached and/or secured to the tube in order to prevent, and/or protect a person, including Plaintiff-decedent, from choking;

(b) the icing tube was defective and unreasonably dangerous because it was not designed, manufactured, tested nor assembled with a cap that was the proper and adequate size to prevent, and/or protect a person, including Plaintiff-decedent, from choking;

(c) the icing tube was defective and unreasonably dangerous because it was not designed, manufactured, tested nor assembled with a cap that was a different color than the tube so the cap could be easily seen and/or differentiated from the tube to prevent, and/or protect a person, including Plaintiff-decedent, from choking;

(d) the icing tube was defective and unreasonably dangerous because it was not designed, manufactured, tested nor assembled with a cap that sealed, secured and/or snapped to the tube to prevent, and/or protect a person, including Plaintiff-decedent, from choking;

(e) the icing tube was defective and unreasonably dangerous because it was not designed, manufactured, tested nor assembled with a cap that met industry safety standards to prevent, and/or protect a person, including Plaintiff-decedent, from choking;

(f) the icing tube and cap were designed and manufactured in such a way as to leave present a latent defect that made the product more dangerous than the consumer, and in particular, the Plaintiff-decedent, would expect;

(g) the icing tube and cap were designed and manufactured in such a way as to be inherently dangerous in that the design of the tube and cap failed to prevent and/or protect a person, including Plaintiff-decedent, from choking; and

(h) The icing tube and cap were generally defective and unreasonably dangerous in their design, manufacture, assembly and warnings because the packaging failed to provide adequate protection when being used as advertised and marketed in that the packaging was furnished without adequate warnings.

65. For the reasons set forth above, the icing tube and cap were unreasonably dangerous to foreseeable users, operators or consumers, including Plaintiff-decedent Jamison Taylor Bachtell.

66. The defects described above directly and proximately caused Plaintiff-decedent Jamison Taylor Bachtell's devastating and catastrophic personal and economic injuries, including his untimely death.

67. As the result of the defects of the icing tube and cap described above, Defendant Signature Brands is strictly liable to Plaintiff-decedent Jamison Taylor Bachtell.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for all actual and compensatory damages in an amount in excess of the prevailing federal arbitration limit and for any other further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT V- BREACH OF WARRANTY
### Plaintiffs v. Defendant Signature Brands

68. The previous paragraphs are incorporated by reference as though fully set forth at length herein.

69. Defendant Signature Brands is in the business of designing, manufacturing, testing, assembling, marketing, distributing and selling the icing tube and cap described in this Complaint.

70. Upon information and belief, Defendant Signature Brands breached both the express and implied warranties, including the warranty of merchantability, in that this product, identified as the icing tube and cap, were not of the fair average quality and standard, and the warranty of fitness for a particular purpose.

71. Upon information and belief Defendant Signature Brands improperly warranted the goods fit for the ordinary purpose intended, fully knowing that the icing tube and cap would be used by persons such as the minor Plaintiff-decedent.

72. Upon information and belief, Defendant Signature Brands improperly warranted to the Plaintiff-decedent Jamison Taylor Bachtell and others that the icing tube and cap were in compliance with local, state and federal regulations and rules in the United States of America.

73. Plaintiff-decedent Jamison Taylor Bachtell could not by the exercise of reasonable care, have discovered the defect or perceived its danger.

74. As the result of the breach of express and implied warranties, Defendant Signature Brands is liable to Plaintiff-decedent Jamison Taylor Bachtell.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for all actual and compensatory damages in an amount in excess of the prevailing federal arbitration limit and for any other further relief as this Honorable Court and/or jury may deem just and proper.

### COUNT VI- FAILURE TO WARN
**Plaintiffs v. Defendant Signature Brands**

75. The previous paragraphs are incorporated by reference as though fully set forth at length herein.

76. Upon information and belief and at all relevant times, Defendant Signature Brands, knowing of the latent dangerous condition of the icing tube and cap resulting from the aforementioned design and manufacturing defects, sold this product and failed to provide any warning of the dangerous condition that was prominent and understandable to foreseeable users or consumers, including Plaintiff-decedent Jamison Taylor Bachtell.

77. As the result of the failure to warn, Defendant Signature Brands is strictly liable to Plaintiff-decedent Jamison Taylor Bachtell.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for all actual and compensatory damages in an amount in excess of the prevailing federal arbitration limit and for any other further relief as this Honorable Court and/or jury may deem just and proper.

### COUNT VII- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff Keith C. Bachtell v. All Defendants

78. The previous paragraphs are incorporated by reference as though fully set forth at length herein.

79. As a result of the tortious conduct and defective design of Defendants' icing tube and cap, Plaintiff Keith Bachtell witnessed his son choke on the cap of the icing tube, and he has been caused to suffer permanent psychological and physical harm, severe emotional and physical distress, depression, anxiety, mental anguish and shock to his nerves and nervous system.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for all actual and compensatory damages in an amount in excess of the prevailing federal arbitration limit and for any other further relief as this Honorable Court and/or jury may deem just and proper.

### COUNT VIII- NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### Plaintiff Renee D. Bachtell v. All Defendants

80. The previous paragraphs are incorporated by reference as though fully set forth at length herein.

81. As a result of the tortious conduct and defective design of Defendants' icing tube and cap, Plaintiff Renee Bachtell witnessed her son choke on the cap of the icing tube, and she

has been caused to suffer permanent psychological and physical harm, severe emotional and physical distress, depression, anxiety, mental anguish and shock to her nerves and nervous system.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for all actual and compensatory damages in an amount in excess of the prevailing federal arbitration limit and for any other further relief as this Honorable Court and/or jury may deem just and proper.

### COUNT IX- WRONGFUL DEATH ACT
### Plaintiffs v. All Defendants

82. The previous paragraphs are incorporated by reference as though fully set forth at length herein.

83. Plaintiffs bring this Wrongful Death Action on behalf of the Estate of Jamison Taylor Bachtell, deceased, under and by virtue of the Wrongful Death Act, 42 Pa.C.S.A. §8301, the applicable Rules of Civil Procedure and decisional law interpreting this Act.

84. Under the Wrongful Death Act, Jamison Taylor Bachtell, deceased, left surviving as his sole heirs-at-law, his loving parents, Keith and Renee Bachtell.

85. These individuals have been notified of the commencement of this action, are listed below, and are the beneficiaries entitled to recover damages under the Wrongful Death Act.

86. As a result of the negligent acts and omissions of the defendants, as described more fully herein, Plaintiff-decedent Jamison Taylor Bachtell, suffered catastrophic, permanent and fatal injuries and death resulting in the entitlement to damages by the aforementioned beneficiaries under the Wrongful Death Act.

87. Plaintiffs claim the full measure of damages recoverable under and by virtue of the Wrongful Death Act and the decisional law interpreting this Act.

88. Plaintiffs claim damages for the pecuniary losses suffered by reason of the death of Jamison Taylor Bachtell, including, but not limited to, damages for all medical expenses, funeral and burial expenses, and the costs of estate administration necessitated by reason of the injuries which caused Jamison Taylor Bachtell's death.

89. Plaintiffs claim damages for the loss of earnings, maintenance, support, comfort, care, society, guidance, tutelage and/or other losses recognized under the Wrongful Death Act, which the Wrongful Death beneficiaries would have received from Jamison Taylor Bachtell had his death not occurred.

90. Plaintiffs claim damages for the monetary support that the decedent could have been expected to provide to the Wrongful Death beneficiaries during Jamison Taylor Bachtell's lifetime had his death not occurred.

91. Plaintiffs claim the loss of the pecuniary value of the services which the decedent could have been expected to provide to the Wrongful Death beneficiaries during Jamison Taylor Bachtell's lifetime had his death not occurred.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for all actual and compensatory damages in an amount in excess of the prevailing federal arbitration limit and for any other further relief as this Honorable Court and/or jury may deem just and proper.

## COUNT X- SURVIVAL ACT
### Plaintiffs v. All Defendants

92. The previous paragraphs are incorporated by reference as though fully set forth at length herein.

93. Plaintiffs bring this Survival Action on behalf of the Estate of Jamison Taylor Bachtell, deceased, under and by virtue of the Survival Act, 42 Pa.C.S.A. §8302, the applicable Rules of Civil Procedure and decisional law interpreting this Act.

94. As a result of the negligent acts and omissions of the defendants, as described more fully herein, Plaintiff-decedent Jamison Taylor Bachtell, suffered catastrophic, permanent and fatal injuries, and death resulting in the entitlement to damages by the Estate of Jamison Taylor Bachtell, deceased, under the aforementioned Survival Act.

95. Plaintiffs bring this action on behalf of the Estate to recover the full measure of damages recoverable under and by virtue of the Survival Act and the decisional law interpreting this Act.

96. On behalf of the decedent's Estate, Plaintiffs claim damages for all economic losses to the decedent's Estate.

97. On behalf of the decedent's Estate, Plaintiffs claim damages for the decedent's conscious physical discomfort, pain and suffering, loss of enjoyment of life and life's pleasures, and all other damages and losses recoverable under the Survival Act and the decisional law interpreting this Act.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, for all actual and compensatory damages in an amount in excess of the prevailing federal arbitration limit and for any other further relief as this Honorable Court and/or jury may deem just and proper.

FRIEDMAN SCHUMAN, P.C.

Date: 11/29/18          By: _____

Derek R. Layser (Atty.# 54938)
Robert H. Nemeroff (Atty. # 34681)
Melissa Paris Miller (Atty.# 312911)
101 Greenwood Avenue, 5th Floor
Jenkintown, PA 19046
P: 215-690-3817
E: dlayser@fsalaw.com
E: rnemeroff@fsalaw.com
E: mmiller@fsalaw.com
*Attorneys for Plaintiffs*

## CERTIFICAITON

Under Federal Rule of Civil Procedure 11, by signing below, I, <u>Derek R. Layser</u>, attorney for Plaintiffs, certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**FRIEDMAN SCHUMAN, P.C.**

Date: 11/29/18

By: /s/ Derek R. Layser

Derek R. Layser (Atty. # 54938)
101 Greenwood Avenue, 5th Floor
Jenkintown, PA 19046
P: 215-690-3817
E: dlayser@fsalaw.com
*Attorney for Plaintiffs*