IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEITH C. BACHTELL and RENEE D. BACHTELL, as Administrators of the Estate of Jamison Taylor Bachtell, dec'd and in their own right,** | : : : : : | **Civil No. 1:18-cv-02292** |
| **Plaintiffs,** | : : | |
| **v.** | : | |
| **GENERAL MILLS, INC. and SIGNATURE BRANDS LLC,** | : : : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

Before the court is the Joint Motion to Dismiss for Failure to State a Claim filed by Third-Party Defendants Waynesboro Hospital, Summit Health, Michael Coriale, M.D., Cumberland Valley Emergency Associates, Ltd., Christopher Andrews, M.D., and Summit Surgical Group-Waynesboro (collectively, the "Medical Malpractice Defendants"). (Doc. 78.)  For the reasons outlined below, the court will grant the motion.

## I.    BACKGROUND

On November 29, 2018, Plaintiffs Keith C. Bachtell and Renee D. Bachtell (collectively, "Plaintiffs") initiated this lawsuit by filing a complaint against Defendants General Mills, Inc. and Signature Brands, Inc. (collectively, the "Manufacturer Defendants") stemming from an accident where their son died from choking on the cap of a Betty Crocker icing dispenser.  (Doc. 1.)  Plaintiffs allege

that Defendants, *inter alia*, improperly designed the Betty Crocker icing package and cap and failed to warn Plaintiffs of the dangers of choking on the cap. They assert negligent infliction of emotional distress, wrongful death, survival, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, failure to warn, and products liability claims.

Before filing this lawsuit, Plaintiffs filed suit against the health care providers that treated their son after he inhaled the cap. After extensive litigation, the parties settled. On June 11, 2019, the Manufacturer Defendants filed a motion for leave to file a third-party complaint for contribution against the Medical Malpractice Defendants. (Doc. 30.) Plaintiffs responded, agreeing that the Medical Malpractice Defendants were joint tortfeasors, but arguing that their inclusion would be impractical. (Doc. 34.) Relying on the parties' agreement that the Medical Malpractice Defendants were joint tortfeasors, the court focused solely on Plaintiffs' practicality arguments and concluded the third-party complaint would not substantially alter judicial economy, thus granting the motion. (Doc. 50.)

On October 29, 2019, the Manufacturer Defendants filed several common law contribution claims against the Medical Malpractice Defendants. (Doc. 52.) On January 3, 2020, the Medical Malpractice Defendants filed a motion to dismiss the contribution claims, arguing they were not in fact joint tortfeasors with the

Manufacturer Defendants. (Doc. 78.) The Manufacturer Defendants then responded (Doc. 87), and the Medical Malpractice Defendants replied (Doc. 91.) This motion is now ripe for review.

## II.    <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 F. App'x 159, 162 (3d Cir. 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96-97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). The universe of facts upon which the court may rely includes those facts alleged in the complaint, facts which the court may take judicial notice of, and indisputably authentic documents referred to in the plaintiff's complaint. *Hartig Drug Co., Inc. v. Senju Pharm Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id*. at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id*. Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. In assessing the level of factual details required under *Twombly*, the Third Circuit has held:

> The Supreme Court reaffirmed that Fed. R. Civ. P. 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests, and that this standard does not require detailed factual allegations.

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations and quotations omitted). The traditional 12(b)(6) standards articulated in *Twombly* and *Iqbal* "apply with equal force to third-party complaints." *Musto v. Office Depot, Inc.*, No. 3:18-CV-02427, 2019 WL 2994230, at *2 (M.D. Pa. July 9, 2019) (internal quotations and ellipses omitted).

## III.   **DISCUSSION**

Under Pennsylvania law, "a joint tort-feasor has a right of contribution against another joint tort-feasor where he has discharged the liability of the second tort-feasor or paid more than his *pro rata* share of liability and, thereby, extinguished the liability of the other joint tort-feasor." *Walton v. Avco Corp.*, 610 A.2d 454, 461 (Pa. 1992) (citing 42 Pa. C.S.A. § 8321 *et seq.*).[1]  "Parties are joint tortfeasors if they are jointly or severally liable in tort for the same injury to persons or property, whether or not judgment has been recovered against all or some of them." *Milo, LLC v. Procaccino*, No. 16-cv-5759, 2020 WL 1853499, at *7 (E.D. Pa. Apr. 13, 2020) (internal quotations and citations omitted).  "In determining whether parties are joint tortfeasors," the court must analyze the following factors:

> the identity of a cause of action against each of two or more defendants; the existence of a common, or like duty; whether the same evidence will support an action against each; the single, indivisible nature of the injury to the plaintiffs; identity of the facts as to time, place or result; whether the injury is direct and immediate, rather than consequential; [and] responsibility of the defendants for the same *injuria* as distinguished from the *damnum*.

*Id.* at *7-8 (internal quotations omitted).

---

[1]     A contribution claim is generally not ripe until the original party is actually compelled to pay a judgment or settlement alleviating its joint tortfeasor of liability.  *Id.* ("Crucial to consideration of this issue is the requirement that the liability of the non-settling joint tort-feasor be *extinguished* before a right to contribution arises.) (emphasis in original). In federal court, however, defendants are allowed to bring third-party contribution claims before paying a judgment.  *See* Fed. R. Civ. P. 14(a)(1) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or ***may be*** liable to it for all or part of the claim against it.") (emphasis added).

Here, the dispute turns on whether the Manufacturer Defendants and the Medical Malpractice Defendants are joint tortfeasors. While the Manufacturer Defendants have put forward creative arguments on this front, seminal Pennsylvania "[c]ase law specifically holds that a tortfeasor originally causing an injury and a physician who subsequently aggravates or causes a new injury are not joint tortfeasors." *See Voyles v. Corwin*, 441 A.2d 381, 384 (Pa. Super. Ct. 1982) (quoting *Lasprogata v. Qualls*, 397 A.2d 803, 805 (Pa. Super. Ct. 1979)); *accord Trout v. Milton S. Hershey Med. Ctr.*, 572 F. Supp. 2d 591, 594-95 (M.D. Pa. 2008) (citing *Voyles* and *Lasprogata*); *Smith v. Pulcinella*, 656 A.2d 494, 497 (Pa. Super. Ct. 1995) ("In each instance, the Superior Court held that the original tortfeasor and the physician were not joint tortfeasors.").

The strongest countervailing authority is *Boggavarapu v. Ponist*, 542 A.2d 516, 517 (Pa. 1988), a Pennsylvania Supreme Court decision stating that if "treatment negligently exacerbates the original injury both" the original tortfeasor and the health care providers "become tortfeasors and both must answer to each other in compensating the injured for the losses they inflict." Careful scrutiny of this line, however, reveals that it is prototypical dicta. The issue before the court in *Boggavarapu* had nothing to do with a contribution claim—it instead focused on whether the jury acted reasonably by finding no pain and suffering for the plaintiff. *Id.* at 167 ("Such is the problem here. A jury is not compelled to believe that a dog

6

bite or puncture by a needle causes compensable pain."). It also does not appear that any court, other than one Court of Common Pleas case,[2] has cited *Boggavarapu* for the proposition that a health care provider and an original tortfeasor can be joint tortfeasors. In fact, this court has previously cited *Boggavarapu* as part of its explanation for why an original tortfeasor and medical malpractice defendant were *not* joint tortfeasors. *See Trout*, 572 F. Supp. 2d at 594-95.

Moreover, none of the authority *Boggavarapu* cites in this area support the idea that a medical malpractice defendant and original tortfeasor are joint tortfeasors. Neither Restatement section cited by *Boggavarapu* supports this proposition. *See* Restatement (Second) Torts § 457 (Am. Law Inst. 1965) (stating that original tortfeasors can be liable for later malpractice); *id.* § 434 (court must determine if harm is apportionable, jury must then apportion). Plus the single case the court cited in this section, *Lasprogata*, held the opposite and even went so far as to suggest that, as a matter of law, original tortfeasors and medical malpractice defendants cannot be joint tortfeasors. *Lasprogata*, 397 A.2d at 805 ("Case law specifically holds that a tortfeasor originally causing an injury and a physician who subsequently aggravates or causes a new injury are Not [sic] joint tortfeasors."). As such, the

---

[2] This case is *McAndrews v. Hicks*, 4 Pa. D. & C.4th 468, 1989 WL 230559 (C.P. Allegheny Cty. Oct. 23, 1989), and it is distinguishable for reasons discussed later in this opinion.

court does not interpret this one line in *Boggavarapu* as a basis for ignoring

consistent analysis throughout other on-point case law.

Turning to the facts before the court, the joint tortfeasor factors

overwhelmingly weigh in favor of finding the Manufacturer Defendants and the

Medical Malpractice Defendants are not joint tortfeasors. *Voyles* is on-point here:

> Walker's duty to Voyles was not the same as the
> physicians' duty. The same evidence cannot support an
> action against both Walker and the physicians. In proving
> the physicians' liability, Voyles will have to prove that
> they failed to exercise due care in treating him. This proof
> can have nothing to do with whether Walker was driving
> properly. Similarly, in proving damages, Voyles will have
> to prove that his condition is worse than it would have
> been had the physicians exercised due care in treating him.
> It may be, as the physicians suggest, that the loss of
> Voyles's leg was an unavoidable consequence of the harm
> Walker did him, no matter what the physicians did or
> should have done. Should a jury so find, the physicians
> would not be liable to Voyles. It may also be that proper
> medical care would have resulted in Voyles's ultimate
> injuries not being so severe. Should a jury so find, the
> physicians would be liable to Voyles for that portion-but
> only that portion-of Voyles's injuries attributable to their
> negligence.

441 A.2d at 383.  Like in *Voyles*, the Manufacturer Defendants and the Medical

Malpractice Defendants bore completely distinct duties to Plaintiffs; their liability

turns on distinct evidence; and the amount they each contributed to Plaintiffs'

ultimate injury can in fact be distinguished.  Specifically, different causation theories

could render different amounts of harm attributable to each defendant.  "It may be,

as the physicians suggest, that the loss of" Plaintiffs' son's life "was an unavoidable consequence of the harm [the Manufacturer Defendants] did him, no matter what the physicians did or should have done." *Id.* "It may also be that proper medical care would have resulted in" Plaintiffs' son surviving, with an unknown degree of permanent brain damage due to hypoxia, or possibly a complete recovery. *Id.* Thus, the amount of harm between the two defendants is separately allocable, and it will be the jury's job to determine exactly how much harm the Manufacturer Defendants are responsible for.

The Manufacturer Defendants rely on a Court of Common Pleas case for the proposition that a medical malpractice defendant can be held liable for contribution to the person who inflicted the original injury. *See McAndrews v. Hicks*, 4 Pa. D. & C.4th 468, 1989 WL 230559 (C.P. Allegheny Cty. Oct. 23, 1989). *McAndrews*, however, turned on the fact that the plaintiffs there explicitly sued the original tortfeasor for the damage allegedly caused by the medical malpractice defendant— something which is permissible under Pennsylvania law, but which also explicitly requires the original tortfeasor to pay for the medical malpractice defendants' wrongdoing. *Id.* at *3. In contrast, Plaintiffs here have not alleged that the Manufacturer Defendants are liable for any harm caused by the Medical Malpractice Defendants. (*See generally* Doc. 1.) In fact, they have made clear in their briefing that they are taking the exact opposite position. (Doc. 34, p. 4 ("Plaintiffs' present

products liability action against Signature Brands, LLC and General Mills, Inc. strictly focuses on the liability of the products defendants in causing Jamison Bachtell's painful and tragic death. . . . Plaintiffs' claims are now concentrated on the products defendants, only.") (emphasis in original).)  This resolves any chance of double-recovery and renders contribution inapplicable.  *See McAndrews*, 1989 WL 230559 at *2 ("Plaintiffs' argument would have substantial merit if plaintiffs were restricting their claims against the original tort-feasors to only those injuries that plaintiff-husband would have sustained if he had received proper medical care."); *Lasprogata*, 397 A.2d at 180 (holding that plaintiff's separate resolution of lawsuits against the original tortfeasor and health care providers, and abstention from suing one for the harm caused by the other, resolved legal tension).  Thus, even if the Medical Malpractice Defendants and Manufacturer Defendants were joint tortfeasors, the fact that Plaintiff is not seeking to hold the Manufacturer Defendants responsible for the Medical Malpractice Defendants' conduct renders joinder inappropriate.

IV.   **CONCLUSION**

For the reasons outlined above, the court will grant the motion to dismiss. Because the Manufacturer Defendants' contribution claims fail as a matter of law, amendment would be futile, rendering the appropriate method of dismissal being with prejudice.  An appropriate order will follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: August 25, 2020

11