IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEITH C. BACHTELL and RENEE D. BACHTELL**, as Administrators of the Estate of Jamison Taylor Bachtell, dec'd and in their own right | : : : : : | Civil No. 1:18-CV-2292 |
| Plaintiffs, | : : | |
| v. | : : | **(Judge Rambo)** |
| **GENERAL MILLS, INC.** and **SIGNATURE BRANDS LLC** | : : : | |
| Defendants/Third Party Plaintiffs, | : : | **(Magistrate Judge Carlson)** |
| v. | : : | |
| **FLAIR FLEXIBLE PACKAGING CORPORATION and MANTO INTERNATIONAL LIMITED** | : : : : | |
| Third-Party Defendants. | : | |

## MEMORANDUM ORDER

### I.  Background

This case arises out of a singular tragedy—the death of a six year old child in December of 2016. On December 10, 2016, Jamison Bachtell and his family were baking and icing holiday cookies when a plastic cap affixed to a tube of icing became lodged in his throat during this family holiday gathering. Tragically, by December

1

11, Jamison Bachtell choked and died as a result of the injuries he sustained in this incident. In the hours between this accident and Jamison Bachtell's death, he underwent emergency treatment at the Waynesboro Hospital, treatment that may have contributed to his injuries and death.

Following the loss of their child, Mr. and Mrs. Bachtell filed suit in the Court of Common Pleas of Franklin County against the hospital and medical personnel who provided this emergency treatment to their son. That litigation concluded with a settlement of the family's claims. The plaintiffs have also brought this action in federal court against General Mills and Signature Bands, LLC, the manufacturer of the icing tube, as well as Flair Flexible Packaging, the manufacturer of the cap that became lodged in Jamison Bachtell's throat. (Doc. 1). Recognizing that the degree to which these various medical actors and product manufacturers may have contributed to the chain of events that led to Jamison's death was a contested issue in this case, efforts were made to join these medical actors as third-party defendants in this case. (Doc. 52). These efforts proved unsuccessful. Ultimately, on August 25, 2020, the district court dismissed these medical third-party defendants.

In dismissing these third party defendants, the district court made several observations that now guide us as we consider discovery disputes between the parties. First, the court found that:

> [S]eminal Pennsylvania "[c]ase law specifically holds that a tortfeasor originally causing an injury and a physician who subsequently

2

> aggravates or causes a new injury are not joint tortfeasors." See Voyles v. Corwin, 441 A.2d 381, 384 (Pa. Super. Ct. 1982) (quoting Lasprogata v. Qualls, 397 A.2d 803, 805 (Pa. Super. Ct. 1979)); accord Trout v. Milton S. Hershey Med. Ctr., 572 F. Supp. 2d 591, 594-95 (M.D. Pa. 2008) (citing Voyles and Lasprogata); Smith v. Pulcinella, 656 A.2d 494, 497 (Pa. Super. Ct. 1995) ("In each instance, the Superior Court held that the original tortfeasor and the physician were not joint tortfeasors.").

(Doc. 104 at 6).

While concluding that these medical actors were not joint tortfeasors who could be joined in this action, the district court nonetheless acknowledged that there was a factual dispute concerning the degree to which the manufacturers of this icing tube and cap, and the medical personnel who treated Jamison Bachtell, were responsible for this child's injuries and death. As the court observed:

> [T]he Manufacturer Defendants and the Medical Malpractice Defendants bore completely distinct duties to Plaintiffs; their liability turns on distinct evidence; and the amount they each contributed to Plaintiffs' ultimate injury can in fact be distinguished. Specifically, different causation theories could render different amounts of harm attributable to each defendant as the physicians suggest, that the loss of" Plaintiffs' son's life "was an unavoidable consequence of the harm [the Manufacturer Defendants] did him, no matter what the physicians did or should have done." Id. "It may also be that proper medical care would have resulted in" Plaintiffs' son surviving, with an unknown degree of permanent brain damage due to hypoxia, or possibly a complete recovery. Id. Thus, the amount of harm between the two defendants is separately allocable, and it will be the jury's job to determine exactly how much harm the Manufacturer Defendants are responsible for.

(Id., at 8-9).

3

The parties are now embroiled in occasionally contentious discovery relating to these negligence and product liability claims brought against General Mills, Signature Brands, and Flair. These discovery disputes have been referred to us for resolution, and the parties' latest dispute calls upon us to assess the issues identified by the district court concerning the allocation of culpability between the medical actors and these defendants, and determine the proper scope of discovery relating to the plaintiffs' prior lawsuit against these medical providers.

General Mills has propounded 14 requests for admission upon the plaintiffs, relating to the claims in this prior medical malpractice lawsuit as well as the settlement of the lawsuit. (Doc. 129-1). The Bachtells objected to these requests for admission, disputing the relevance of this information concerning their prior lawsuit in the instant case. (Doc. 129-2). On January 26, 2021, after receiving notice of this discovery dispute, we convened a telephonic conference of counsel. In the course of this conference, several facts became evident. First, it is apparent that all parties agree that the underlying facts regarding the degree to which medical negligence may have contributed to the injuries and death of Jamison Bachtell are relevant in this case. Instead, what is disputed is the extent to which admissions regarding the claims made in this prior lawsuit, or the settlement of those claims, materially advances an understanding of those underlying facts.

As to this issue, the parties have starkly different views. Noting that the medical defendants have been dismissed from this case, the plaintiffs contend that the claims alleged in this prior litigation, and the settlement of those claims, would not be relevant, admissible, or discoverable in this case. In contrast, General Mills suggests that this information concerning the Bachtells' state court lawsuit and its settlement may aid the jury in assessing and allocating relative culpability in this case, a task the district court indicated would fall to the jury at trial. In addition, General Mills' counsel argued that the defendant should be entitled to show that at various times, the plaintiffs have attributed negligence and causation for Jamison's injuries and death to different actors.

Upon consideration, we agree in the main with the plaintiffs that, while the underlying facts concerning the degree to which medical negligence contributed to the injuries and death of Jamison Bachtell are relevant, discovery regarding the claims and settlement of this prior lawsuit has limited relevance in this case. Therefore, we will sustain the plaintiffs' objections to these requests for admission.

**II.**     **Discussion**

The resolution of this discovery dispute is guided by familiar legal principles. The scope of discovery is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged

> matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). While Rule 26 states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," this concept of relevance is tempered by principles of proportionality.

We are now enjoined to also consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.'" Fassett v. Sears Holdings Corp., 319 F.R.D. 143, 150 (M.D. Pa. 2017) (quoting Wertz v. GEA Heat Exchangers Inc., No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)). See Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2020 WL 109654, at *3 (M.D. Pa. Jan. 9, 2020).

As the text of Rule 26 implies, decisions regarding the proper scope of discovery and the reach of protective orders are matters consigned to the court's discretion and judgment. Therefore, a court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

To the extent that discovery demands seek information concerning the settlement of other cases, additional considerations come into play.

> When presented with requests for the disclosure of documents relating to the settlement of claims certain additional principles guide the exercise of the court's discretion. There is an inherent tension between Fed.R.Evid. 408, which prohibits the use of settlement discussions to prove liability, and Rule 26, which permits liberal discovery. The mere fact that settling parties have agreed to maintain the confidentiality of their agreement does not automatically serve to shield the agreement from discovery. We note that several courts have addressed the question of whether a non-settling party should have access to a settlement agreement that is confidential by agreement of the signatories, as is the case here. "None of these courts have blithely permitted discovery, but rather require some heightened showing of relevance or need." In re Flat Glass Antitrust Litigation, 2013 WL 1703864 * 1 (W.D. Pa. Apr. 19, 2013) (internal citations omitted).

Duncan v. Black, No. 2:15CV1347, 2018 WL 317957, at *2 (W.D. Pa. Jan. 8, 2018). "Thus, while the 'Third Circuit does not recognize a settlement privilege, ... Parties seeking to discover such [settlement] communications must make a heightened, more particularized showing of relevance.'" Id. at *3 (quoting Rhines v. United States, 2014 WL 3829002 *3 (M.D. Pa. Aug. 4, 2014)).

In the instant case, we are presented with a dispute concerning the extent to which the claims brought by the plaintiffs against various medical defendants in a prior lawsuit, and the settlement of those claims, is relevant and admissible in the products liability case brought by the Bachtells against General Mills, Signature Brands, and Flair. While we agree that the facts surrounding the medical treatment given to Jamison Bachtell on December 10, 2016 is doubtless relevant here, we

8

believe that General Mills' position conflates the universally acknowledged relevance of this information with its actual discovery demands, which request admissions regarding prior litigation rather than underlying factual matters.

For example, the evidentiary relevance of admissions regarding the settlement of this prior state case is highly problematic since Rule 408 of the Federal Rules of Evidence seems to flatly declare that such matters are generally not relevant or admissible. Nor has General Mills made the type of "heightened, more particularized showing of relevance" typically required to compel such discovery. Rhines, 2014 WL 3829002, at *3. Therefore, General Mills is not legally entitled to compel admissions to the fact of the settlement of this prior case.

The defense requests for admissions concerning the fact that the plaintiffs have previously alleged that the negligence of these medical actors caused the death of Jamison Bachtell presents a somewhat closer question. In broad strokes, this information may have some potential relevance in a case that entails allocating culpability between the manufacturers and medical actors since it shows that the plaintiffs have attributed some blame to the medical actors at an earlier date. However, in our view, these requests that demand admissions concerning the details of the claims set forth in this prior civil complaint are both too detailed and unnecessary.

These requests or admissions are unnecessary because the plaintiff executed a verification to the state court complaint itself "verify[ing] that the statements made in the . . . Civil Complaint are true and correct to the best of our knowledge, information, and belief." (Doc. 129-1, at 50). Thus, to the extent that the allegations in the prior state complaint have some evidentiary value—a matter that the parties will likely contest at trial—the plaintiffs have already attested to their belief that these allegations are true and correct. Given these facts, compelling further admissions by the plaintiffs to facts that they have already attested to is superfluous, unnecessary and disproportionate to the needs of the case. Therefore, we will not compel further responses by the plaintiffs to these requests for admissions.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED:     January 27, 2021

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEITH C. BACHTELL and RENEE D. BACHTELL**, as Administrators of the Estate of Jamison Taylor Bachtell, dec'd and in their own right | : : : : : | Civil No. 1:18-CV-2292 |
| Plaintiffs, | : : | |
| v. | : : | (Judge Rambo) |
| **GENERAL MILLS, INC.** and **SIGNATURE BRANDS LLC** | : : : | |
| Defendants/Third Party Plaintiffs, | : : | (Magistrate Judge Carlson) |
| v. | : : | |
| **FLAIR FLEXIBLE PACKAGING CORPORATION** and **MANTO INTERNATIONAL LIMITED** | : : : : | |
| Third-Party Defendants. | : | |

# O R D E R

AND NOW, this 27th day of January 2021, in accordance with the accompanying Memorandum, IT IS ORDERED that the defendant's request to compel the plaintiffs to respond to requests for admissions (Doc. 129) is DENIED.

/s/ *Martin C. Carlson*
United States Magistrate Judge
